JUSTICE RICE,
dissenting.
¶78 I believe the Court has erred in its statutory analysis and given preference to an administrative regulation over conflicting statutes, thereby rendering an incorrect decision.
¶79 In Montrust I, this Court addressed the constitutionality of a number of statutes governing the use of state trust lands, two of which are at issue here. See Montanans for the Responsible Use of the Sch. *173 Trust v. State ex rel. Bd. of Land Commrs. (Montrust I), 1999 MT 263, ¶¶ 4-9, 296 Mont. 402, 989 P.2d 800. Subsequently, the Legislature revised these statutes to cure the faults noted in Montrust I, which are discussed further herein. Montrust I did not, however, address the issue before us today-the right given to former leaseholders by statute to be reimbursed for improvements. As the Court explained in Montrust I, “our holding does not reach the requirement, in § 77-6-305, MCA, that former lessees be reimbursed for their improvements.” Montrust I, ¶ 58.
¶80 As the Court explains, Admin. R. M. 36.25.125(6) does two things. It 1) “allows a new lessee to decide whether to purchase movable improvements and fixtures,” Opinion, ¶ 12; and 2) “requires a former leaseholder to remove movable improvements from a leasehold not wanted by the new lessee.” Opinion, ¶ 25. The Court believes that the right bestowed upon a new lessee by the regulation to reject movable improvements and to require the old lessee to remove them is consistent with statute, stating that “[njothing in the leasing statutes direct that the new lessee must purchase all movable improvements regardless of their desirability to the new lessee.” Opinion, ¶ 34.
¶81 However, to the contrary, the leasing statutes provide that “when another person becomes the lessee of the land, the person shall pay to the former lessee the reasonable value of the improvements. The reasonable value may not be less than the full market value of the improvements.” Section 77-6-302(1), MCA (emphasis added). As we noted in Montrust I, this constitutes a “requirement ... that former lessees be reimbursed for their improvements.” Montrust I, ¶ 58. The requirement of full reimbursement makes no distinction between movable and unmovable improvements.
¶82 Eligibility for reimbursement is made dependent, not on the movability of the improvements and the new lessee’s desires, but on whether the improvements were pre-approved by the Department. In accordance wdth § 77-6-301, MCA, the Department’s lease with Grenz provided that “[f]ailure to obtain approval prior to placement of the improvement may result in such improvements not being recognized by the Department for purposes of reimbursement of such improvements.” As the Court notes, all of Grenz’s improvements were submitted to and approved by the Department. Nowhere in Grenz’s lease was he advised that a subsequent lessee could refuse to reimburse him for movable improvements he had made with the Department’s approval. In fact, his lease stated just the opposite. Consistent with § 77-6-302(1), MCA, Grenz’s lease promised him that, *174 if “he desires to sell” his improvements, the “new lessee shall pay the former lessee the reasonable value of such improvements as of the time the new lessee takes possession thereof.”
¶83 The Court reasons that the requirement for reimbursement for all improvements is negated by subsection (3) of § 77-6-302, MCA, which provides:
(3) Upon the termination of a lease, the department may grant a license to the former lessee to remove the movable improvements from the land. Upon authorization, the movable improvements must be removed within 60 days or they become the property of the state unless the department for good cause grants additional time for the removal. The department shall charge the former lessee for the period of time that the improvements remain on the land after the termination of the lease.
The Court believes by this provision the Legislature has given special treatment to movable improvements such that the new lessee may reject the former lessee’s movable improvements and avoid reimbursement. The Court sees within this provision a requirement that the former lessee “must remove any movable improvements” which are rejected by the new lessee. Opinion, ¶ 30. This is an errant reading of the statute which directly conflicts with the statutory directive to reimburse the old lessee for all improvements. The Court creates the new lessee’s “right to reject” movable improvements, and imposes the old lessee’s “obligation to remove” improvements, out of thin air. These directives are found nowhere in the statutory language, nor are they implied by the language.
¶84 Actually, this provision permits the Department to issue a license authorizing the former lessee to enter the property to retrieve the improvements if the former lessee does not “desire[] to sell” his improvements, as stated in Grenz’s lease agreement. This licensure provision was made necessary by Montrust I, which struck down the Department’s practice of delaying the transfer of the lease while improvement valuation issues were resolved. See Montrust I, ¶¶ 51,58. Now, the lease must transfer immediately, and the license permits the former lessee to remove his movable improvements, if he elects to do so, while the new lessee has possession of the real property. The statute now requires the Department to “charge the former lessee for the period of time that the improvements remain on the land,” § 77-6-302(3), MCA, to comply with the directive of Montrust I that trust lands not “idle indefinitely.” Montrust I, ¶ 58. The former lessee must remove the improvements within 60 days or forfeit the improvements *175 to the state. However, none of this new process has changed the requirement “that former lessees be reimbursed for their improvements.” Montrust I, ¶ 58. Grenz has statutory and contractual rights to receive reimbursement for all of his pre-approved improvements, if he so elects.
¶85 This conclusion is confirmed by review of the other statutory provisions. Section 77-6-303, MCA, entitled “Determination of compensation,” sets forth the factors which are to be considered in valuing the improvements and states “[consideration must be given to all actual improvements ...” Section 77-6-303(1), MCA (emphasis added). Thus, the statutory factors which must be considered in determining the compensation to be paid for the improvements require valuation of all improvements, whether movable or unmovable. Similarly, § 77-6-306, MCA, providing for the arbitration process to resolve valuation disputes, states that “[i]f the owner of any improvements on state lands of the type authorized by law at the time they were placed on state lands desires to sell these improvements to the new lessee and they are unable to agree on the value of the improvements ... the value must be ascertained and fixed by three arbitrators....” Section 77-6-306(1), MCA (emphasis added). Again, the valuation of “any” improvement is mandated.
¶86 The Court places heavy emphasis upon a phrase within § 77-6-303(1), MCA, which provides that, in determining the value of the improvements, one factor to be considered is their “desirability for the new lessee.” The Court reasons from this phrase that “[t]he leasing statutes expressly allow the Department to consider the new lessee’s preferences.” Opinion, ¶ 34. The Court thus leaps to likewise expand this provision beyond its actual meaning. That an arbitrator may consider the desirability of improvements for a new lessee in determining their value does not mystically create authority in the Department to permit a new lessee to reject improvements altogether.
¶87 In the 2005 Legislative Session, House Bill 351 was enacted to add language to § 77-6-302(1), MCA, requiring the Department to obtain a listing of all a lessee’s improvements and their reasonable values prior to bidding on the lease, and requiring that this information be provided to bidders. The legislative history of the bill indicates a concern about the loss of leases to a new bidder when “many of these lessees have made improvements on the land they are leasing.” Mont. H. Agrie. Comm., Minutes of the Hearing on H. Bill 351, 59th Legis., Reg. Sess. 2 (Jan. 27, 2005). The bill’s purpose was to make the Department notify new bidders about the requirement that former *176 lessees “receive compensation [for the improvements] from the new lessee if the prior lessee loses his bid.” Mont. H. Agrie. Comm., Minutes of the Hearing on H. Bill 351, at 2. There is no mention in the discussion about new lessees being able to reject movable improvements. Indeed, the concern was the opposite-that new lessees would be clearly advised of the obligation to compensate former lessees for their improvements. The urgency of the matter was expressed by rancher Patrick McNulty, who testified that “only a small minority of ranchers in their county do not have a state lease.” Mont. H. Agrie. Comm., Minutes of the Hearing on H. Bill 351, at 2 (emphasis added).
¶88 I am convinced the Court has manufactured a preferred outcome which is not supportable within the statutes, and has made the regulation paramount. An application of the plain meaning of the statutes-or, if necessary, the context and structure of the statutory scheme, the legislative history and our caselaw-all reveal the same result: the new lessee’s “right to refuse improvements” is a regulatory creation which conflicts with statute. I believe the District Court reached the correct decision and would affirm.
JUSTICE NELSON concurs with JUSTICE RICE’S Dissent.
¶89 I maintain that there never was a final judgment in this case, as I state in my Dissent. However, were I to reach the merits, I would join Justice Rice’s well-reasoned Dissent. Indeed, given the plain and unambiguous language of the statutes at issue, the Court’s Opinion is astonishing.